# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KRISHNA HINTON §
§
    Plaintiff, §
§
v. §    Civil Action File No.: _____
§
QUATRRO FPO SOLUTIONS, LLC §    **JURY TRIAL DEMANDED**
§
    Defendant. §
§
§
§
§

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Krishna Hinton (hereinafter "Ms. Hinton" or "Plaintiff Hinton") and files this, her Complaint for Damages, showing the Court the following:

## INTRODUCTION

1.

Plaintiff Hinton brings this action against Defendant Quatrro FPO Solutions, LLC (hereinafter referred to as "Quatrro" or "Defendant") because Defendant terminated her employment because of her disability (actual or perceived) after Ms. Hinton had been out of work due to her disability for just over one month and Defendant failed to grant Plaintiff the reasonable accommodation of a short amount of leave so Plaintiff could complete medical testing. The reason given by Defendant

for Plaintiff Hinton's termination on May 10, 2016 (Plaintiff Hinton's attendance and failure to meet company expectations) was a pretext for discrimination and false. Ms. Hinton continually kept Defendant informed via a variety of emails and medical notes, and asked that she be given a short leave for medical diagnosis and treatment. Such medical treatment and diagnosis were completed on May 24, 2016 and resulted in Ms. Hinton's clearance to return to work in June 2016.

## THE PARTIES

2.

Plaintiff Hinton was employed in October 2015 as front desk administrator by Defendant, and Plaintiff worked out of the Defendant's facility in Marietta, Georgia. Plaintiff is a resident of the State of Georgia.

3.

Defendant Quatrro is a Minnesota limited liability company with a principal place of business at 1850 Parkway Place, Suite 1100, Marietta, Georgia 30067. Defendant may be served through its registered agent, CT Corporation at 1201 Peachtree Street, N.E., Atlanta, Georgia 30361 pursuant to Fed. R. Civ. P. 4. Defendant employs more than 15 people and is covered by the ADA.

## JURISDICTION AND VENUE

4.

Jurisdiction and venue of this Court is proper in this District pursuant to 28 U.S.C. § 1331 as arising under the laws of the United States. Venue is proper in this Court under 28 U.S.C. § 1391(b).

5.

All conditions precedent to the institution of this suit have been fulfilled. As to the Americans with Disabilities Act claims, Plaintiff Hinton timely filed charges with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue, and this action has been filed within ninety (90) days of receipt of said Notice.

## FACTS

6.

Plaintiff Hinton was hired by Defendant as front desk administrator in October 2015. Ms. Hinton performed her job satisfactorily and was seen as a good employee by Defendant. Throughout her employment, Ms. Hinton had been frequently complimented by her peers and managers on her job performance and work ethic. Indeed, shortly after beginning employment in the administrator position – about one month – Defendant moved Ms. Hinton up to a junior project manager position.

7.

On or about April 15, 2016. Ms. Hinton was forced to take unpaid medical leave as she initially experienced flu-like symptoms, coughing, and a sore throat, which she reported to her boss. This problem was initially difficult for the medical professionals to diagnose and ultimately required Ms. Hinton visiting six (6) different medical providers until a diagnosis was provided in May 2016: a form of Gall Bladder disease.

8.

On or about April 18, 2016, Ms. Hinton's initial symptoms progressed, causing her more fatigue and requiring her to seek treatment from doctors at Walgreens Healthcare Clinic, who initially diagnosed Ms. Hinton with an upper respiratory infection. Ms. Hinton was provided a respirator and steroids. Ms. Hinton reported this information to her boss.

9.

On or about April 23, 2016, Ms. Hinton suffered significant abdominal pain, fever, sweats, lethargy and other inability to function. Ms. Hinton suffered substantial limitations in her sleeping, performing manual tasks, reaching, lifting, breathing, walking, and in the operating of major bodily functions, such as the digestive, endocrine, and musculoskeletal functions. Ms. Hinton sought treatment with doctors at WellStar Urgent Care, whom completed blood tests and provided

4

Ms. Hinton with antibiotics. Doctors at WellStar became highly concerned with the results of Ms. Hinton's white blood cell count, and as a result, referred her for the first available appointment with Northwest Georgia Oncology/Hematology on May 5, 2016. Ms. Hinton continued to keep Defendant informed of her condition through a variety of emails and calls to her boss, as well as Defendant's Vice President of Human Resources, David Ford. Additionally, Ms. Hinton provided Defendant medical notes and asked that she be given a short leave for medical diagnosis and treatment. The Defendant did not respond.

10.

On April 29, 2016, Ms. Hinton sent another email to Defendant updating them on her medical status, indicating, "I have finally have a confirmed appointment with the oncologist for May 5th . . . please advised me on what steps I need to take."

11.

In response to Ms. Hinton's April 29, 2016 email, Defendant replied, "I suggest you me and Kristen talk on Monday [May 2, 2016] and develop a game plan in terms of next steps." Defendant never contacted Ms. Hinton on May 5, 2016 to develop any "game plan in terms of next steps." Rather, Defendant continued to dismiss Ms. Hinton's inquiries, and stated in a May 2, 2016 email to Ms. Hinton, "we will schedule a time to talk today or tomorrow."

12.

On May 2, 2016, Ms. Hinton was rushed to WellStar Kennestone Hospital after experiencing pain in her abdomen so severe that she had difficulty breathing, standing, and walking. Due to abnormalities found in Ms. Hinton's gallbladder along and presence of a hiatal hernia at this appointment, she was advised to see a gastroenterologist to consider a hepatobiliary iminodiacetic acid (HIDA) scan. Ms. Hinton made the first available appointment she could with the gastroenterologist for May 6, 2016. Ms. Hinton continued to communicate this information to David Ford, as her boss remained on vacation.

13.

On May 4, 2016, after receiving no further contact from Defendant on or after May 2, 2016, Ms. Hinton sent an email to Defendant indicating that "I haven't heard back from you so just wanted to check in." The Defendant respond that they would "be in touch by tomorrow," May 5, 2016. However, after this May 4, 2016 email, Mr. Ford stopped responding to Ms. Hinton.

14.

As a result of Mr. Ford's lack of responsiveness and seeming dismissal of Ms. Hinton's inquiries, on May 8, 2016, Ms. Hinton sent an email to Defendant's Human Resource Generalist, Dan McBride. In her email, Ms. Hinton indicated, "I am writing for three reasons. First, to update you on what is going on. I have been to several specialist, and they think it could be several things. My stomach (ulcers), my

gallbladder and thyroid. They have scheduled me for an endoscopy tomorrow and am awaiting the date for a HIDA test and appointment for my thyroid. I can provide you with whatever paperwork you need . . . lastly, I have been in contact with David [Ford] throughout this and he keeps telling me he is going to call me and I have still not heard a word from him so I just wanted to make sure someone else was in the loop."

15.

After completion of the HIDA scan on May 18, 2016, Ms. Hinton was informed her gallbladder was functioning at less than 10% and was instructed to have her gallbladder surgically removed.

16.

On May 24, 2016, Ms. Hinton underwent a successful cholecystectomy, and made a speedy and full recovery and was cleared to work again in June 2016. Ms. Hinton ended up out of work due to her medical disability for less than two (2) months. Nevertheless, rather than reasonably accommodate Ms. Hinton's disability by giving her additional leave, Defendant rushed to fire her on May 10, 2016 because of her inability to work due to her medical disability.

## COUNT ONE:

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

**A: Defendant Fired Plaintiff Because of Her Actual or Perceived Disability.**

17.

Plaintiff Hinton incorporates herein by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

18.

At all times relevant herein, Plaintiff Hinton had a disability, was regarded as disabled by Defendant and/or had a record of disability pursuant to, among other authority, 29 C.F.R. 1630.2(g).

19.

At all times, relevant herein, Plaintiff Hinton had, was regarded as and/or had a record of having a condition that limits major life activities, including, but not limited to, sleeping, performing manual tasks, reaching, lifting, breathing, walking pursuant to 42 U.S.C. 12102(2)(A) and 29 CFR 1630.2(i)(1)(i), and limited the operating of major bodily functions, such as the digestive, endocrine, and musculoskeletal functions.

20.

By its actions set forth above, Defendant intentionally discriminated against the qualified Plaintiff Hinton who had a disability, was perceived as having a disability or had a record of having a disability. As a direct result of Plaintiff

8

Hinton's disability, Defendant terminated her employment. Plaintiff Hinton has suffered and continues to suffer damages from that termination.

**B. Defendant Failed to Provide Plaintiff Hinton with a Reasonable Accommodation.**

21.

Plaintiff Hinton incorporates herein by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

22.

Plaintiff Hinton was qualified for her position and able to perform all of the essential functions of her position with or without a reasonable accommodation(s). Defendant discriminated against the qualified Plaintiff Hinton by failing to provide a reasonable accommodation(s) of at least additional short term leave to allow for Plaintiff Hinton to complete her medical diagnosis and evaluation, including allowing for her to receive the results of the HIDA scan. Defendant failed to engage in an interactive process regarding said accommodation, and said accommodation did not impose an undue hardship on the Defendant's business. 42 U.S.C. § 12112(b)(5)(A). As a direct result of Defendant's refusal to provide Plaintiff Hinton with a reasonable accommodation(s), Plaintiff Hinton has suffered and continues to suffer damages from that wrongful act(s).

23.

Defendant has a human resources department that was aware of the company's obligations under the ADAAA and aware that Defendant's actions and omissions towards Plaintiff would violated Plaintiff's rights under the ADAAA. By its actions set forth above, including but not limited to failing to respond to multiple email communications from Plaintiff, failing to consult with or accommodate (to the extent necessary) Plaintiff prior to her termination, failing to reconsider Plaintiff's termination, providing demonstrably false explanations for Plaintiff's termination, and terminating Plaintiff despite knowledge that said termination would violate her federally protected rights, Defendant intentionally discriminated against Plaintiff Hinton with malice or reckless indifference to her federally protected rights.

24.

Plaintiff Hinton is entitled to the relief set forth in the prayer for relief below.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff Hinton respectfully prays that this Court grant the following relief:

a.      That Plaintiff Hinton have and recover from Defendant back pay and benefits, with prejudgment interest thereon;

b.      That the Court Order Defendant to rehire Plaintiff Hinton to her prior position, with salary and fringe benefits that she would have received in that position since the date of her termination, as applicable; or, in the alternative, award front pay and benefits in an amount sufficient to compensate her for the loss of future salary and fringe benefits;

c.      That Plaintiff Hinton have and recover compensatory damages in an amount to be determined by a jury;

d.      That Plaintiff Hinton have and recover punitive damages in an amount to be determined by a jury;

e.      That Plaintiff Hinton have and recover his attorneys' fees and costs of litigation; and

f.      Any and other such further relief that this Court or the Finder of Fact deems equitable and just.

**Plaintiff Hinton demands a trial by jury.**


This 16th day of March, 2017.


                          Respectfully submitted,

                          HILL, KERTSCHER & WHARTON, LLP


                          By: /s/ Douglas R. Kertscher
                              Douglas R. Kertscher


11

Case 1:17-cv-00906-WMAC Document 6-9 Filed 03/16/17 Page 12 of 12

Georgia State Bar No. 416265
Julie H. Burke
Georgia State Bar No. 448095
*Attorneys for Plaintiff*


3350 Riverwood Parkway
Suite 800
Atlanta, Georgia 30339
Telephone:  770-953-0995
Facsimile:  770-953-1358
E-mail:       drk@hkw-law.com
E-mail:       jb@hkw-law.com

12